In re Gussie Mae TAYLOR, Debtor.

SEARS, ROEBUCK & COMPANY, Plaintiff,

v.

Gussie Mae TAYLOR, Defendant.

G.E. CAPITAL CORPORATION/MACY'S, Plaintiff,

v.

Gussie Mae TAYLOR, Defendant.

MONTGOMERY WARD CREDIT CORPORATION, Plaintiff,

v.

Gussie Mae TAYLOR, Defendant.

FDS NATIONAL BANK, Plaintiff,

v.

Gussie Mae TAYLOR, Defendant.

Bankruptcy No. 96–06051–8C7.

Adversary Nos. 96–823, 96–830, 96–831, and 96–832.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 23, 1997.

Ralph S. Marcadis, Tampa, FL, Chris Vorbeck, Sarasota, FL, for Sears, Roebuck & Co.

Louis Bakkalapulo, Clearwater, FL, for FDS Nat. Bank, G.E. Capital Corp./Macy's, and Montgomery Ward Credit Corp.

Michael Barnett, Tampa, FL, for Gussie Mae Taylor.

*ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE THIRD AFFIRMATIVE DEFENSE*

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

These adversary proceedings came on for final pretrial conference on March 11 and 17, 1997. Following hearing argument at the conference, the court took under advisement the motions to strike the defendant's third

affirmative defense filed by the plaintiffs, G.E. Capital Corporation/Macy's, Montgomery Ward Credit Corporation, and FDS National Bank.

## I.

In the complaints filed by these plaintiffs, the plaintiffs allege in Count II claims under Section 523(a)(6) of the Bankruptcy Code for willful and malicious injury by the debtor to the property of the plaintiffs. The plaintiffs' claims arise from the alleged disposition of the debtor's property that she acquired using credit card accounts maintained with the plaintiffs. The plaintiffs allege that the debtor's disposition of this property in derogation of the plaintiffs' security interests in that property constitutes the willful and malicious injury contemplated by Section 523(a)(6).

The defendant's third affirmative defense states that:

> If plaintiff i[s] the proper party in interest, plaintiff cannot recover under count 2 of the complaint due to the failure of plaintiff to have a security interest under Florida law, in that the agreement with the creditors falls under § 520.35 of the Florida Statutes, which section does not provide for security agreements.

In their motions to strike, the plaintiffs assert that this third affirmative defense fails to state a legal defense. The sole issue raised in the motions is whether a security interest can be taken by a credit card issuer in goods purchased on the credit card or "revolving account" under the Florida Retail Installment Sales Act, Section 520.30 *et seq.*, Florida Statutes. For purposes of this motion, the court assumes as it must that each account in question is a "revolving account" within the meaning of the statute and that, if Florida law permits the taking of a security interest in goods purchased on each of the accounts, the parties have done all those things necessary to create those security interests. A security interest is required for the plaintiffs' Section 523(a)(6) claims, of course, because the security interest creates the plaintiffs' property rights that the debtor allegedly destroyed by disposing of the property.

## II.

The defendant relies on *Oszajca v. Sears, Roebuck & Co. (In re Oszajca)*, 199 B.R.103, 110 (Bankr.D.Vt.1996), as support for its third affirmative defense. In that case, the bankruptcy court concluded that, as a matter of Vermont law, a revolving charge agreement prohibits the taking of a security interest. Without a security agreement, the plaintiff's Section 523(a)(6) claim failed.

That court's analysis began with Vermont's Retail Installment Act (VRISA), the applicable statute controlling all retail credit arrangements in that state. VRISA permits only two types of retail credit arrangements: a retail installment contract and a retail charge agreement. Every Vermont retail agreement is either one or the other; it cannot be both. The court concluded that the retail agreement at issue was a retail charge agreement. *Id.* at 107.

The court next turned to the issue of whether a Vermont retail charge agreement precluded the taking of a security interest. Because the statutory definition of a retail installment agreement provides for the taking of a lien and the statutory definition of a retail charge agreement does not, the court concluded that as a matter of statutory construction the absence of the language allowing the taking of a lien in the retail charge agreement statute should be read as an exclusion.[1] *Id.* at 108.

The court was further persuaded by the fact that VRISA allows a higher interest cap in a retail charge agreement then it does in a retail installment agreement. It found that a distinction in the ability to take a security interest was a plausible explanation for the difference. *Id.* at 109.

---

1. 9 V.S.A. § 2401(7) defines a retail contract as "[A] contract entered into in this state and designated as a retail installment transaction, but not a retail charge agreement, or a document reflecting a sale under it, evidencing an agreement to pay the retail purchase price of goods, or any part thereof, in two or more installments over a period of time, and pursuant to which title to or a lien upon, or a security interest in, the goods is retained or taken by the retail seller to secure the payment of a price which includes the charge as limited by section 2405 of this title."

Finally, there was some legislative history, albeit occurring some years after the passage of the Act, that supported the court's conclusion that a retail charge agreement prohibited the taking of a security interest.

## III.

Applying Florida law to the instant proceeding, the distinctions that the Vermont court found so persuasive are much more attenuated in the applicable Florida statutes than in the applicable Vermont statutes. The definition of a "retail installment contract" found in Section 520.31(10),[2] Florida Statutes, contains no reference whatsoever to the granting of a lien or a security interest. Similarly, the definition of a "revolving account" found in Section 520.31(13) is silent on the subject of security.[3]

Nothing in Section 520.34 or Section 520.35, Florida Statutes, which set forth the requirements for these kinds of accounts, deals with the issue of security except the reference to security found in Section 520.34(10). That section requires the seller in a retail installment contract to deliver to the buyer a release of security upon the payment of the contract.[4] Although this language clearly contemplates that a security interest may be taken with a retail installment contract, it is a much further reach to conclude that it is integral to the statutory definition of such a contract. That conclusion, it seems to this court, is a necessary predicate to a finding that one type of contract, the retail installment agreement, can be a secured transaction by definition and the other, the revolving account, cannot.

Florida is also distinguished from Vermont in that there is no legislative history to shed light on the reading of the statute.

It is true, as in Vermont, that Florida defines revolving accounts and retail installment accounts as mutually exclusive and provides for a higher interest cap for revolving charge accounts. The disparate interest rates may be explained, however, by the differing payment methods between the two types of accounts. The principal in a retail installment account is usually paid off at a much faster rate and the creditor's risk accordingly diminished as a consequence. Because the account holder in a revolving account may elect to make minimum payments, the creditor has a greater exposure in the event of default and may, therefore, be entitled to a greater return.

Finally, the right to take a security interest is at bottom a common law right, subject to limitation by statute. In the absence of a clear legislative mandate, the court declines to abrogate this common law right. This is especially the case because it does not appear that any court in a reported decision has followed *Oszajca* in this or in any other state.

## IV.

For these reasons, the court grants the plaintiffs' motions to strike the third affirmative defense. The court strikes the third affirmative defense from the defendant's answers to the complaints of these plaintiffs. The defense states no legal defense. Accordingly, the proceedings will come on for trial. As to the plaintiffs' Section 523(a)(6) claims, Florida law does not preclude the plaintiffs from taking a security interest in goods pur-

**2.** Fl. St. § 520.31(10) defines a "retail installment contract" as "an instrument or instruments reflecting one or more installment transactions entered into in this state pursuant to which goods or services may be paid for in installments. It does not include a revolving account or an instrument reflecting a sale pursuant thereto."

**3.** Fl. St. § 520.31(13) defines a "revolving account" as "an instrument or instruments prescribing the terms of retail installment transactions which may be made thereafter from time to time pursuant thereto, under which the buyer's total unpaid balance thereunder, whenever in-

curred, is payable in installments over a period of time and under the terms of which a finance charge is to be computed in relation to the buyer's unpaid balance from time to time."

**4.** Fl. St. § 520.34(10) states: "After payment of all sums for which the buyer is obligated under a contract, and upon written demand made by the buyer, the holder shall deliver or mail to the buyer, at his last known address, one or more good and sufficient instruments to acknowledge payment in full and shall release all security in the goods."

chased by the defendant on revolving accounts if the parties otherwise comply with applicable law as to the creation of such a security interest.

DONE and ORDERED.